IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PARK & FLANDERS, LLC, a Delaware limited liability company, | ) ) ) | Civil No.: 3:12-cv-01636-JE |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION |
| v. | ) ) | |
| ROBERT C. BREWSTER, JR., individually, | ) ) | |
| Defendant. | ) ) | |
| ROBERT C. BREWSTER, JR., individually, | ) ) | |
| Counter-Plaintiff | ) ) | |
| v. | ) ) | |
| BRIAN PEARCE, individually, UNICO, INC., and PARK & FLANDERS, LLC, a Delaware limited liability company, | ) ) ) ) ) | |
| Counter-Defendants. | ) ) | |

_____

    Michael G. Halligan
    Thomas W. Stilley
    Timothy A. Solomon
    Sussman Shank, LLP
    1000 SW Broadway, Suite 1400
    Portland, OR 97205

       Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION – 1

    Michael G. Halligan
    Thomas W. Stilley
    Sussman Shank, LLP
    1000 SW Broadway, Suite 1400
    Portland, OR 97205

        Attorneys for Counter-Defendants

    Michael J. Esler
    Kim T. Buckley
    Esler, Stephens & Buckley, LLP
    121 S.W. Morrison Street, Suite 700
    Portland, OR 97204-3183

    Andrew L. Paris
    6733 NE Alameda
    Portland, OR 97213

        Attorneys for Defendant and Counter-Plaintiff

JELDERKS, Magistrate Judge:

    Plaintiff Park & Flanders, LLC brings this action to enforce personal guaranties signed by Robert C. Brewster, Jr. Brewster brings counterclaims against Park & Flanders, Unico, Inc. and Brian Pearce seeking damages for alleged breaches of a confidentiality agreement, fraudulent transfer of information and interference with a contractual relationship. Brewster now moves for summary judgment against Park & Flanders' claims.

    For the reasons set out below, Defendant's motion for summary judgment should be denied.

## **Claims**

    Park & Flanders' Complaint sets out two claims.

    Park & Flanders' first claim alleges Brewster breached his personal guaranty obligations under a loan agreement between General Auto Building, LLC (GAB) and HomeStreet Bank

FINDINGS AND RECOMMENDATION – 2

(HomeStreet). Park and Flanders is the current owner and holder of the HomeStreet loan to GAB.

Park & Flanders' second claim alleges that Brewster breached his personal guaranty obligations under a loan agreement between GAB and the Portland Development Commission (PDC).  Park & Flanders is the current owner and holder of the PDC loan to GAB.

## Background

GAB is the owner of an office building located on NW Park Avenue in Portland, Oregon. Brewster is the former managing member of GAB.  Although he no longer has an ownership interest in GAB, he is the current Manager of GAB and the building at NW Park Avenue.

On June 13, 2008, GAB entered into a loan agreement and associated documents with HomeStreet for a loan in the principal amount of $10,200,000.  As part of the HomeStreet loan agreement, Brewster, acting in his individual capacity, signed an "Unconditional Guaranty of Payment and Performance" agreeing to guarantee GAB's payments under the HomeStreet loan agreement.

Also on June 13, 2008, GAB entered into a loan agreement and associated documents with the City of Portland, through the PDC, for a loan in the principal amount of $1,400,000.  As part of the PDC loan agreement, Brewster, acting in his individual capacity, signed a Guaranty, agreeing to guarantee GAB's payments under the PDC loan agreement.

In a letter dated September 22, 2011, counsel for HomeStreet notified GAB that it was in default under the HomeStreet loan.  The letter also notified GAB that HomeStreet was accelerating the loan and making a "formal demand jointly and severally upon Borrower and Guarantor . . . for immediate payment to Lender of the full amount of the indebtedness."

In a letter dated January 10, 2012, the PDC notified GAB that GAB was in default under the PDC loan. In its letter, the PDC notified GAB that as a result of the default, it was declaring "the entire unpaid principal, unpaid interest, and unpaid late fees and all other charges payable by GAB under the PDC loan documents to be immediately due and payable."

On or about February 10, 2012, HomeStreet commenced non-judicial foreclosure proceedings by filing a Notice of Default and Election to Sell real property of GAB subject to the HomeStreet Loan. HomeStreet also filed a Complaint for Appointment of Receiver for the property.

On March 2, 2012, GAB filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Oregon. As a result of the filing, all further action in the non-judicial foreclosure and receivership proceedings were stayed.

On April 17, 2012, HomeStreet sold to Park & Flanders all of its rights, title and interest in the HomeStreet Loan Documents, including the HomeStreet Guaranty. On April 18, 2012, PDC sold to Plaintiff Park & Flanders all of its rights, title and interests in the PDC Loan Documents, including the PDC Guaranty.

On September 11, 2012, Park & Flanders filed the current action in the U.S. District Court.

On February 11, 2013, GAB filed its Fifth Amended Plan of Reorganization with the Bankruptcy Court (the "Plan"). Park & Flanders filed objections to the Plan on March 26, 2013. A hearing on confirmation of the Plan was held and the Bankruptcy Court issued a letter ruling on July 5, 2013. On July 11, 2013, the Bankruptcy Court entered an Order amending and confirming the Plan (Confirmation Order).

FINDINGS AND RECOMMENDATION – 4

Under the Plan, as modified by the Confirmation Order, GAB is obligated to pay Park & Flanders on the HomeStreet loan secured claim the amount of $11,108,079 at a fixed interest rate of 5.5% per annum. Payments in the first year are interest only. Payments over the subsequent nine years are to be principal plus interest based on a 30-year amortization schedule with a balloon payment at the end of the 10 year period.

The Confirmation Order provides that the claim based on the PDC loan acquired by Park & Flanders will be treated as a Class 4 General Unsecured Claim and that all liens and security interests in GAB's property securing the PDC Claim are void. Under the Plan, as modified by the Confirmation Order, GAB is obligated to make quarterly payments to Plaintiff of an amount equal to Plaintiff's pro rata share of GAB's Excess Cash. Payments are to continue until

> (a) holders of Class 4 Claims have been paid in full together with interest at the Federal Judgment Rate; or (b) the last day of April 2023, whichever shall first occur, provided however that, in the event that holders of Class 4 Claims have received payments totaling at least 60% of their Class 4 Claim on or before April 30, 2018, then the Class 4 Claims will be deemed to have been paid and satisfied in full and [GAB] will have no further payment obligations.

Brewster Decl. Ex. 6, ¶ 5.3.

In his Declaration, Brewster asserts that since implementation of the Plan, there has been no default or deficiency of any kind by GAB in its payments to Park & Flanders.

## **Evaluating Motions for Summary Judgment**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party

FINDINGS AND RECOMMENDATION – 5

shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial.  Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material.  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party.  Id. at 630-31.  The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Discussion**

Brewster contends that summary judgment against Park & Flanders' claims is appropriate because material changes to the terms of the loans materially increased his risk as guarantor and thus released him from the obligations of the guaranties.  Brewster also contends that Park & Flanders' election to commence a non-judicial foreclosure of its security interest in GAB's assets barred whatever right it may have had to pursue him as a guarantor.

I. **Material Changes to the Loan Agreements**

As noted above, Brewster argues that material modifications made to the loans as a result of the Plan materially increased his risk as guarantor, thereby releasing him from the obligations of the guaranties.

A. **Standards**

Under Oregon law, a guarantor is discharged from his obligations when, without the guarantor's consent, the principal and creditor materially alter the terms of their contract.  See

Marc Nelson Oil Prods. v. Grim Logging Co., 199 Or. App. 73, 79, 110 P.3d 120, 123 (2005) (modified on other grounds)(citing Equitable Savings & Loan v. Jones, 268 Or. 487, 491, 492, 522 P.2d 217 (1974)).  The court must therefore first determine whether the guarantor has consented. Id. at 80.  If so, the guarantor' obligation is not discharged and the court must next determine whether the guarantor is compensated or uncompensated. Id.  A compensated guarantor's obligation is discharged only when there is a material alteration to the underlying agreement that materially increases his risk or is otherwise "actually or potentially detrimental" to the guarantor. Id. at 79.  The test for a material change is whether "a 'careful and prudent person undertaking the risk would have regarded [the change] as substantially increasing the chances of loss.'" Lloyd Corp. v. O'Connor, 258 Or. 33, 37, 479 P.2d 744 (1971) (quoting Young v. American Bonding Company, 228 Pa. 373, 380, 381, 77 A. 623, 626 (1910)) .

B. **Analysis**

The parties agree that Brewster is a compensated guarantor.  Accordingly, in order for there to be a discharge of Brewster's obligation as a guarantor there must have been a material change to the loan agreements that materially increased his risk as a guarantor.  Brewster asserts that the material change that materially increased his risk was the Plan's modification of the HomeStreet loan agreement's interest rate from a variable rate to a fixed interest rate of 5.5% per year.

Park & Flanders argues that Brewster's motion should be denied as a matter of law because neither loan was modified and Brewster's obligation under the Guaranties to pay the full amount of both loans arose and was settled before any alleged modification.  Park & Flanders asserts, and Brewster does not dispute, that GAB defaulted on both the HomeStreet loan and the PDC Loan before the bankruptcy filing.  GAB was notified of its defaults by both PDC and

HomeStreet. Carner Decl. Ex. A; Ex. B.  The PDC's Notice of Default, which was addressed to GAB and to Brewster's attention, declared the entire unpaid principal, unpaid interest, unpaid late fees and "all other charges payable by GAB under the PDC loan documents to be immediately due and payable."  Carner Decl. Ex. A.  In its Notice of Default, HomeStreet notified Brewster of his obligation under the Guaranty to pay HomeStreet all amounts owed under the loan, notified GAB and Brewster that it was accelerating the loan and made a formal demand "jointly and severally upon Borrower and Guarantor . . . for immediate payment" of the full amount of the indebtedness. Carner Decl. Ex. B.

      The record supports only the conclusion that the PDC and HomeStreet loans matured according to their terms and that Brewster's obligations as guarantor were settled before the bankruptcy petition was filed and well before the Plan containing the "modifications" Brewster alleges was confirmed by the Bankruptcy Court.  Accordingly, the change in interest rates implemented by the Plan, which Brewster asserts materially increased his risk, did not discharge Brewster of his obligations because those obligations were already settled and due.  See Marshall-Wells Co. v. Tenney, 118 Or. 373, 385, 244 P. 84 (1926)(material change in the obligation or duty of the principal debtor to which the guaranty relates "will release the guarantor from liability, unless made with his consent, if such change takes place before the guarantor's liability is finally settled")(citations omitted).

      Park & Flanders also argues that the bankruptcy case in which the Court restructured GAB's obligation to Park & Flanders over Park & Flanders' objection is irrelevant as to the question of whether Brewster's obligations were discharged.  Park & Flanders asserts that the restructuring did not constitute a "modification" of the terms of the loans with regard to the guarantor's obligations and cites authority for its contention that Chapter 11 debt restructuring

FINDINGS AND RECOMMENDATION – 8

has no effect on the liability of a guarantor for the original debt. See 11 U.S.C. § 524(e) ("discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt."

Brewster contends that his argument is not that the bankruptcy case released his obligations but that the "increased payments being made by GAB to Plaintiff, when compared to the original terms of the loan" constitute a material change that materially increased Brewster's risk, thereby discharging his guaranty obligations. This argument is unpersuasive for at least three reasons.

First, the restructuring of GAB's debt was made pursuant to a Plan proposed by GAB and signed by Brewster as the manager of GAB's managing member after GAB filed a petition for bankruptcy. The Plan was amended and confirmed by the Bankruptcy Court over Park and Flanders' objections and the Confirmation Order was signed by Brewster in his individual capacity and as a manager. Brewster Decl. Ex. 6; Carner Decl., Ex. E; Brewster Decl. Ex. 5. Unlike in the Mark Nelson and Fassett cases cited by Brewster, this was not a situation where without the guarantor's consent, the principal and creditor materially altered the terms of their contract.

Second, Park & Flanders argues that there is express waiver language in each of the Guaranties limiting Brewster's right to contest his liability based on modifications of the loans. Brewster offers no substantive argument against these contentions. The PDC Guaranty provides that:

> The Guarantor consents, without affecting the Guarantor's liability to the Lender hereunder, that the Lender may, without notice to or consent of the Guarantor. . .
>
> (c) Settle or compromise any claim of the Lender against the Borrower, or against any other person, firm, or corporation, whose obligation is held by the Lender as security for any obligation of the Borrower to the Lender. The Guarantor ratifies

FINDINGS AND RECOMMENDATION – 9

> and affirms any such extension, renewal, release, surrender, exchange, modification, impairment, settlement or compromise, and all such actions shall be binding upon the Guarantor, who hereby waives all defenses, counterclaims, or offsets which the Guarantor might have.

PDC Guaranty, Brewster Decl. Ex. 3 at ¶ 4.  In the HomeStreet Guaranty, Brewster agreed that his obligations were

> absolute and unconditional, not subject to any counterclaim, set-off, recoupment, deduction or defense . . . and shall remain in full force and effect without regard to, and shall not be released, discharged or terminated or in any other way affected by any circumstance or condition (whether or not Guarantor shall have any knowledge or notice thereof), including without limitation; (a) any amendment, modification, or extension of time for payment or performance of any Guaranteed Obligations . . .; (d) any bankruptcy, insolvency, reorganization, adjustment, dissolution, liquidation or other like proceeding involving or affecting Borrower or Lender or their respective properties or creditors . . . or any action taken with respect to the Loan Documents . . . by any court, in any such proceeding.

HomeStreet Guaranty, Brewster Decl. Ex. 4, ¶ 4.

In addition, the Confirmation Order contains a stipulation by Brewster that "nothing in the Final Amendment affects [Brewster's] guaranty obligations, if any, related to the Master Lease and any related documents.  Confirmation Order, Brewster Decl. Ex. 5, ¶¶ E-F.  The express language of these provisions supports only the conclusion that Brewster has waived any right to contest his Guaranty obligations on the basis that the terms of the PDC and HomeStreet loans were materially modified by the Plan.

Finally, Brewster's contentions fail because, as Park & Flanders argues, even if the changes made under the Plan are construed as modifications, the modifications did not materially increase Brewster's risk under the Guaranties.  As noted above, Brewster does not dispute that GAB defaulted on both the HomeStreet loan and the PDC loan before the bankruptcy filing. GAB was notified of its defaults by both PDC and HomeStreet. Carner Decl. Ex. A; Ex. B.  The notifications of default and the loan agreements support Park & Flanders' assertion that, as a

FINDINGS AND RECOMMENDATION – 10

result of the defaults and under the terms of the loan agreements, interest began accruing on the unpaid principal balance of the PDC loan at a rate of 8.0% per year and on the HomeStreet loan at a rate of 10% per year. HomeStreet Note at §§2(c); PDC Loan Agreement at §§ 9.1,10.1, 10.14. Thus, by the time GAB filed its petition for bankruptcy, there was already an obligation, under the terms of the initial loan agreements, to pay interest on the PDC and HomeStreet loans at the higher default rates. Brewster Decl. Ex. 3, §5; Ex. 4, § 2.

Under the Plan, GAB is permitted to pay its matured debt to HomeStreet over a ten year period at a fixed interest rate of 5.5% and to pay an undetermined amount in fulfillment of its matured debt to PDC based upon the amount of Excess Cash that is available. Brewster Decl. Ex. 6, at §5.2; Ex. 5, ¶¶ 2, 4. In addition, if payments totaling at least 60% of the PDC claim are received before April 30, 2018, the claim "will be deemed to have been paid and satisfied in full," and GAB will not have any further payment obligations on the PDC claim after the last day of April 2023, even if no payments have been made up to that date. As noted above, Park & Flanders argues that Brewster's risks have not changed at all because he continues, pursuant to the Plan and Confirmation Order, to be liable for payment of the full amount of both loans. Nevertheless, Park & Flanders argues that even if Brewster's obligations were affected by the modifications, his risks would be materially reduced because the terms under the Plan are vastly better for GAB than the terms GAB faced under the defaulted loans.

For the reasons discussed above, I am unpersuaded that a trier of fact could conclude that the changed repayment terms under the reorganization Plan for the HomeStreet and PDC loans held by Park & Flanders operate to discharge Brewster's guaranty obligations under either loan.

II. **Election of Remedies**

In his Reply in support of his Motion for Summary Judgment, Brewster raises the

FINDINGS AND RECOMMENDATION – 11

argument that Park & Flanders' election to commence a non-judicial foreclosure of its security interest in GAB's assets barred whatever right it may have had to pursue him as a guarantor. With leave of the Court, Park & Flanders filed a Sur-Reply addressing this argument.

First, Park & Flanders argues and points to evidence in the record that Brewster explicitly waived any defense based on election of remedies. That waiver appears in a section of the HomeStreet Guaranty entitled "Election of Remedies," and provides that

> . . . Guarantor understands a non-judicial foreclosure of any deed of trust securing the Guaranteed Obligations could impair or eliminate any subrogation or reimbursement rights Guarantor may have against Borrower, nevertheless Guarantor hereby waives and relinquishes any defense based upon the loss or impairment of any such reimbursement or subrogation rights and any other defense which may arise out of any applicable "one action" or "anti-deficiency" rule, law or statute now or hereafter in effect

Brewster Decl. Ex. 3, § 6.

Brewster provides no argument against Park & Flanders' assertion that he has waived any defense based on election of remedies. Because I conclude, for reasons discussed below, that Park & Flanders' actions did not constitute an election of remedies, I need not and do not address the issue of waiver.

Brewster argues that by electing to non-judicially foreclose against GAB and then deciding to pursue GAB in bankruptcy, Park & Flanders made an election of remedies that discharged Brewster from his obligations under the Guaranties. Brewster cites to ORS 86.797(2) which provides, in pertinent part

> Except in accordance with subsection (4) of this section, after a trustee's sale under ORS 86.705 to 86.815, or after a judicial foreclosure of a residential trust deed, an action for a deficiency may not be brought or a judgment entered against the grantor, the grantor's successor in interest or another person obligated on:
>
> (a) The note, bond or other obligation secured by the trust deed for the property that was subject to the trustee's sale or the judicial foreclosure . . . .

FINDINGS AND RECOMMENDATION – 12

Park & Flanders argues that Brewster's reliance on ORS 86.797(2) is misplaced because the statutory language is clear that it applies "[a]fter a trustee's sale" and, in the present case, it is undisputed that no foreclosure sale took place. I agree. The provisions of ORS 86.797(2) explicitly apply "after a trustee's sale. . ." and, therefore, do not apply here.

Brewster also contends that Park & Flanders brought its foreclosure action to a final determination in the Bankruptcy Court when the Plan was confirmed. Thus Park & Flanders made an election of remedies that bars further action to collect a deficiency on the note. In support of this proposition, Brewster cites Family Bank of Commerce v. Nelson, 72 Or. App. 739, 697 P.2d 216 (1985). and Ward v. Beem Co., 249 Or. 204, 437 P.2d 483 (1968) and argues these cases stand for the proposition that an actual sale in favor of the secured party is not necessary to constitute a binding election of remedies, but rather that a final determination of the creditor's rights in the foreclosure action is sufficient.

In Family Bank, the Oregon Court of Appeals cited prior case law in which "the remedy of foreclosure was carried to final determination, which resulted in barring a later action on the note." Id. at 745 (citing Ward v. Beem Co., 249 Or. 204, 257 P.2d 255 (1968)). The court noted the "general rule [that] an election is not made until a judicial proceeding has gone to judgment" Id. at 742 (citing Colonial Leasing Co. v. Tracy, 276 Or. 1193, 1196 (1976)) and held that by filing a complaint to foreclose the non-commercial trust deed, the plaintiff did not elect the remedy of foreclosure. Id. at 746.

In Ward, plaintiffs sought a declaration that defendants' purchase money second mortgage and the indebtedness supporting it had been discharged by the defendants' participation in a previous foreclosure proceeding. Plaintiffs had assumed a first mortgage held by Umpqua Savings and Loan and signed five notes secured by a purchase money second

FINDINGS AND RECOMMENDATION – 13

mortgage. The notes were held by defendants. Umpqua brought a foreclosure suit and named the defendants as parties. The defendants joined in a single answer in which they "prayed for a foreclosure of their mortgage and 'that any overplus there be, be applied in payment and satisfaction of these answering Defendants' mortgage.'" Id. at 210. The property was subsequently sold at a foreclosure sale and defendants received part of the overplus after the first mortgage was satisfied. The question before the court was whether the defendants were barred from bringing actions on their notes as a consequence of their participation in the foreclosure proceedings. Id. at 207-208. In holding that the defendants' conduct constituted an election of remedies, the court observed that this was a case "in which defendants pray for and receive relief to which they are entitled only as mortgagees. The substance of their defense is that the foreclosure decree did not expressly provide that their mortgage was also foreclosed. This attaches too much significance to the technical wording of the decree and elevates form over substance." Id. at 211.

      Park & Flanders argues that neither of the cases cited by Brewster supports his position and neither involves bankruptcy proceedings. Furthermore, it disputes that the non-judicial foreclosure proceeding was brought to a "final determination" since the subject property was never sold at a trustee sale and GAB's bankruptcy filing stopped the foreclosure proceeding with GAB retaining the property as of this date.

      Park & Flanders also argues that even if the bankruptcy case did constitute a "final determination," such a determination would be judicial and a subsequent action against Brewster to recover any deficiency would be expressly permitted under ORS 86.797(4)(b), which provides in pertinent part that "[t]his section [ORS 86.797] does not preclude: (b) An action against a guarantor for a deficiency that remains after a judicial foreclosure."

FINDINGS AND RECOMMENDATION – 14

Here, HomeStreet Bank commenced non-judicial foreclosure proceedings. GAB then filed for bankruptcy protection. After the bankruptcy filing, HomeStreet and PDC sold to Park & Flanders all of their rights, titles and interests in their respective loan documents. The parties agree that the foreclosure process was stopped by the bankruptcy filing, that no trustee sale occurred and that GAB retains the property at issue. An election of the remedy of a non-judicial foreclosure occurs only upon sale. Barclaysamerican/Financial, Inc. v. Boone, 95 Or. App. 347, 349, 768 P.2d 439, on recons. 96 Or. App. 635, 773 P.2d 1338 (1989).

The doctrine of the election of remedies is designed to prevent double recoveries for a single wrong. State ex. Rel. Washington County v. Betschart, 72 Or. App. 692, 699, 697 P.2d 206 (1985). Resolution of the bankruptcy case and a final determination as to the prior foreclosure proceedings are two separate issues. Although a Plan is in place that has restructured GAB's debt obligations, that Plan did not, as Brewster argues, constitute a "final determination of the creditor's rights in the foreclosure action." I am unpersuaded that the foreclosure proceeding's current status as a result of the Plan and Confirmation Order constitutes an election of remedies on the part of Park & Flanders.

A careful review of the record supports only the conclusion that the non-judicial foreclosure proceedings commenced against GAB did not constitute an election of remedies by Park & Flanders. Consequently, there was no discharge of Brewster's guaranty obligations under either the HomeStreet or PDC loans due to any such election and Plaintiff is not barred from enforcing those guaranties.

## Conclusion

For the reasons discussed above, Defendant Brewster's motion for summary judgment (#36) should be DENIED.

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 6, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 17th day of September, 2014.

              /s/ John Jelderks
              John Jelderks
              U.S. Magistrate Judge